**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03248-DDD-MDB

AMY WRANY and
ASHLEY JOHNSON,

Plaintiffs,

v.

EL PASO COUNTY, COLORADO, by and through its Board of County Commissioners,
EL PASO COUNTY DEPARTMENT OF HUMAN SERVICES,
OFFICE OF THE CHILD'S REPRESENTATIVE,
EXECUTIVE DIRECTOR OF THE COLORADO OFFICE OF THE CHILD'S REPRESENTATIVE, in his or her official capacity,
JESSICA DRIVER,
CODY CHRISTIAN,
KEVIN MAJOR, and
LESHA DELANEY,

Defendants.

---

**COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO Fed.R.Civ.P. 12(b)(1) and (6)**

---

Defendants, El Paso County, Colorado, by and through its Board of County Commissioners ("BoCC") and the El Paso County Department of Human Services, ("EPC DHS," and collectively, the "County Defendants") submit this Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 10) (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Eleventh Amendment Immunity, and the Colorado Governmental Immunity Act ("CGIA"). In support thereof, the County Defendants state as follows.

**Duty to Confer Under D.C.COLO.LCivR.7.1(a)**

Plaintiffs and counsel for the County Defendants conferred via electronic mail on January 21, 2026. Plaintiffs oppose this motion.

# I. INTRODUCTION

Plaintiffs bring claims alleging § 1983 Due Process violations (Claims 1-3; 5-7; 9-10; 15-18; 20-24), violations of the Americans with Disabilities Act ("ADA") (Claims 4 and 8), and various state law claims (Claims 11-16; 18-19; 23). These claims arise from the removal of Plaintiff Johnson's minor children in a dependency and neglect case initiated by EPC DHS. As will be further explained herein, the Court must dismiss the claims asserted against the County Defendants because (1) EPC DHS is entitled to Eleventh Amendment Immunity; (2) Plaintiffs fail to allege a plausible constitutional violation or theory of *Monell* liability; (3) Plaintiffs fail to allege a plausible ADA violation; and (4) the County Defendants are entitled to immunity under the Colorado Governmental Immunity Act ("CGIA").

# II. SUMMARY OF ALLEGATIONS CONCERNING THE COUNTY DEFENDANTS

This action arises from the removal of Plaintiff Johnson's children, A.H. and E.H., in a dependency and neglect case (El Paso County District Court Case No. 2022JV30246) that began in 2022. Plaintiff Johnson alleges disability based on her status as a person "having a medically managed condition requiring methadone treatment and related accommodations." (Doc. 10, p. 8, ¶ 28; *Id.* at p. 16). Plaintiff Wrany is the maternal grandmother of A.H. and E.H. (*Id.* at p. 3, ¶¶ 1-2), and the children were placed in her home at different times during the case. Id. The children were later placed with other family members before being placed in foster care. (*Id.* at ¶ 3).

The dependency and neglect case remained open from September 2022 through January 2026. While the case was open, the juvenile court ordered Plaintiff Johnson to complete a treatment plan consisting of substance abuse and mental health treatment, and to attend visitation with her children. (*See generally* Doc. 10, pp. 3-15.)

Plaintiffs later voluntarily moved to Oklahoma while the children remained in foster care in Colorado. (*Id.* at pp. 4-5, ¶¶ 4, 6, 9). Plaintiffs acknowledge the limited services available in Oklahoma (*Id.* at pp. 9-10). The children were eventually placed in Oklahoma with Plaintiff Wrany in February 2025, with one reason for the delay being A.H.'s need for critical ongoing medical treatment. (*Id.* at pp. 5-6, ¶ 12.) The children were returned to Plaintiff Johnson's custody in Oklahoma in November 2025. The dependency and neglect case closed in January 2026, three months after Plaintiffs brought this complaint.

Throughout the court proceedings, Plaintiff Johnson was represented by counsel, and the best interests of the children were represented by a guardian ad litem ("GAL"). (*Id.* at p. 5, ¶ 7). At every court proceeding, the juvenile court found EPC DHS had made reasonable efforts to reunite the family. (*Id.* at p. 4, ¶ 5; p. 7, ¶ 21).

## III. <u>STANDARD OF REVIEW</u>

A Rule 12(b)(1) motion empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). Where a plaintiff has sued a governmental entity and that entity interposes a motion to dismiss for lack of jurisdiction, the plaintiff has the burden of demonstrating that governmental immunity has been waived. *Tidwell ex rel. Tidwell v. City & Cnty. of Denver*, 83 P.3d 75 (Colo. 2003).

To survive a Rule 12(b)(6) motion, a complaint must allege factual matter to state a plausible claim for relief. Fed.R.Civ.P. 12(b)(6). A complaint that contains only "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will it do if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Thus, conclusory allegations are "not entitled to the assumption of truth" and are not considered. *Id.* at 679. Instead, a court looks to whether the complaint includes "enough factual matter (taken as true) to suggest that" the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556. Conclusory allegations and legal conclusions are insufficient. If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik v. United Airlines*, 671 F.3d 1188, 1190-1191 (10th Cir. 2012). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal* at 678.

## IV. <u>ARGUMENT</u>

### A. EPC DHS is Entitled to Eleventh Amendment Immunity.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. In Colorado, municipal departments of social services are in reality arms of the state." *Romero v. City & Cnty. of Denver Dep't of Soc. Servs.*, 57 F. App'x 835, 837 (10th Cir. 2003). *See also* C.R.S. § 26-1-118(1) ("The county departments or other state designated agencies ... shall serve as agents of the state department."). Eleventh Amendment immunity generally bars citizens from bringing claims against a state. This bar is jurisdictional. *K.A. v. Barnes*, 134 F.4th 1067 (10th Cir. 2025). Eleventh amendment immunity applies regardless of whether a plaintiff

seeks declaratory or injunctive relief, or money damages. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). Here, Plaintiffs bring § 1983 claims seeking monetary damages and declaratory and injunctive relief against EPC DHS. EPC DHS is unquestionably immune from these claims under the Eleventh Amendment.

EPC DHS notes that sovereign immunity may not apply to requests for *prospective* injunctive seeking to enjoin *ongoing* violations of federal law under the *Ex Parte Young* doctrine. While this may be true, Plaintiffs do not allege an *ongoing* violation of federal law as the underlying child custody case concluded with the minor children being returned to Plaintiff Johnson's custody and care in Oklahoma. They instead seek redress for past alleged violations. The *Ex Parte Young* doctrine, therefore, has no application here. *See, e.g. Fletcher v. Polis*, No. 23CA0797, 2024 WL 3978443, at *3 n. 1 (Colo. App. Mar. 21, 2024) ("The *Ex parte Young* doctrine permits suits to be brought in federal court against state officers in their personal capacities for prospective injunctive relief — not retroactive monetary relief — to stop ongoing violations of federal law.") *citing See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-55 (2011).

Accordingly, the Court must dismiss Plaintiffs' § 1983 claims against EPC DHS because it is entitled to absolute immunity under the Eleventh Amendment.

**B. Plaintiffs' § 1983 Claims Fail as a Matter of Law.**

Plaintiffs bring § 1983 claims alleging violations of their first amendment rights, rights to procedural due process assured under the Fourteenth Amendment, and rights to substantive due process assured under the Fourteenth Amendment. These claims must be dismissed for a variety of reasons.

**1. Plaintiffs Fail to Allege that the BoCC Participated in the Underlying Conduct.**

First, as noted above, EPC DHS is the arm of the state statutorily charge with prosecuting cases of child dependency and neglect in El Paso County. *See, e.g.,* C.R.S. § 26-1-118(1). The BoCC has no direct involvement in child dependency and neglect cases under this statutory framework. Given this, Plaintiffs' Complaint must do more than cursorily allege that the BoCC was involved in the dependency and neglect case giving rise to this action. The Complaint fails to clear this fundamental hurdle. The Court must dismiss Plaintiffs' § 1983 claims brought against the BoCC as a result. *See. e.g., Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (It "is particularly important…that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual defendant with fair notice as to the basis of the claims against him or her…").

**2. Plaintiffs Fail to Allege the County Defendants Engaged in Retaliatory Conduct Prohibited by the First Amendment.**

Second, with respect to Plaintiffs' First Amendment claim, they fail to plausibly allege that any County Defendant was responsible for the allegedly retaliatory conduct. For a plaintiff to establish a sufficient retaliation claim, they must allege that they sought to exercise their First Amendment rights by filing a grievance; that the defendant was aware of the plaintiff's attempt to file grievances; that as a result of that awareness, the defendant took action to impose an adverse consequence on the plaintiff; and that the consequence would chill a person of ordinary firmness from engaging in the constitutionally protected activity. *Williams v. Klien*, 20 F. Supp. 3d 1171, 1175 (D. Colo. 2014). Here, Plaintiffs claim that other parties were responsible for actions designed to impose an adverse consequence on them. For instance, Plaintiffs allege that after filing complaints, they were retaliated against when the County Defendants "restricted visitation,

scheduling meetings during work hours, canceling visits for minor tardiness, spreading false statements, and threatening that complaints would be "dealt with both in and out court." (*Id.* at p. 16). The statement about being "dealt with" is specifically attributed to the GAL. (*Id.* at p. 5, ¶ 10.) The remaining allegations are conclusory, especially when considering Plaintiffs continued to make complaints. (*Id* at pp. 13-15.) Accordingly, Plaintiffs' First Amendment claims are not plausible.

**3. Plaintiffs Fail to Allege a Plausible Procedural Due Process Violation.**

Third, Plaintiffs fail to allege a plausible procedural due process violation. Plaintiffs claim the County Defendants violated their constitutional due process rights under the Fourth and Fourteenth Amendments by removing A.H. and E.H. without a court order and by restricting their ability to meaningfully participate in the case.

> "Temporary protective custody orders may be requested by the county department of human or social services…if such person or department believes that the circumstances or conditions of the child are such that continuing the child's place of residence or in the care and custody of the person responsible for the child's care and custody would present a danger to that child's life or health in the reasonably foreseeable future." C.R.S. § 19-3-405.

States have a compelling interest in and a solemn duty to protect the lives and health of the children within their borders; accordingly, when a child's life or health is endangered by her parents' decisions, in some circumstances a state may intervene without violating the parents' constitutional rights under the Due Process Clause. U.S. Const. amend. XIV. *See also PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182 (10th Cir. 2010). "[W]hen faced with emergency circumstances which pose an immediate threat to the safety of a child, the state may temporarily deprive a parent of custody without parental consent or a court order." *Lowther v. Child. Youth & Fam. Dep't*, 101 F.4th 742 (10th Cir. 2024).

Here, A.H. and E.H. were removed from their parents' custody pursuant to EPC DHS's statutory and regulatory duties imposed by the Children's Code (*See* C.R.S. § 19-1-101 et seq.) and Volume 7 of the Code of Colorado Regulations (*See* 12 CCR 2509-1-9.) The circumstances giving rise to their removal implicated their health and safety due to the actions of their parents. As such, Plaintiffs have not plausibly alleged that A.H. and E.H. were unconstitutionally removed.

To the extent Plaintiffs claim their due process rights were violated throughout the case, the County Defendants assert they were provided ample opportunity to participate. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "In dependency and neglect actions, procedural due process requires that a parent be given notice of the proceedings, an opportunity to be heard, and the assistance of legal counsel; these rights are satisfied if the parent appears through counsel and is given the opportunity to present evidence and cross-examine witnesses." *People In Int. of M.B.*, 2020 COA 13, 459 P.3d 766, 772.

The juvenile court appointed an attorney for Plaintiff Johnson and a GAL to represent the children's best interests. Plaintiffs' Complaint is replete with references to the services Plaintiff Johnson was offered, such as family time with her children, mental health and substance abuse treatment, and urinalyses to prove sobriety. Plaintiffs further describe the court hearings they attended, and the professionals, including GALs, Court Appointed Special Advocates ("CASA"), and therapists, who worked with their family to ensure they were safely reunified. There, Plaintiffs' claims that they were not afforded due process are not plausible.

**4. Plaintiffs Fail to Allege a Substantive Due Process Allegation.**

Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations without due process of law and extends to bar certain government

conduct regardless of the fairness of the procedures used to implement them; in its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective. U.S. Const. amend. XIV. *See also Furlong Enters., LLC v. Nickerson*, 785 F. Supp. 2d 970 (D. Colo. 2011). Courts in the Tenth Circuit recognize the existence of a right to familial association within the substantive rights protected by the Due Process Clause. *See Griffin v. Strong*, 983 F.2d 1544, 1546–47 (10th Cir.1993). The courts use a balancing test to determine whether familial association has been infringed, whereby the court balances an individual's interest in liberty against the state's asserted reasons for restraining it. *Wagner* at 1199.

Substantive due process prevents the government from engaging in conduct that derives a person of life, liberty, or property in a way so arbitrary that it "shocks the conscience." *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697 (1987). To establish conscience-shocking behavior, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Ordinary negligence will not suffice. *Est. of Goodwin by & through Alvarado v. Connell*, 376 F. Supp. 3d 1133 (D. Colo. 2019).

As discussed above, A.H. and E.H. were removed from Plaintiffs' custody based on legitimate safety concerns that were undertaken pursuant to EPC DHS's statutory obligations. Although parents have an associational right to a relationship with their children, the state has a prevailing interest in the health and safety of children when their parents' actions put them at risk. *Wagner* at 1182. In *Wagner*, the court analyzed the "forced separation" of the child from its parents while involved in a child welfare case due to alleged medical neglect before finding that the state provided numerous opportunities for the parents to obtain their own medical treatment before

removal. Accordingly, the court found there was no undue burden on parents' relationship with their child. As relevant here, EPC DHS removed A.H. and E.H. because they were at risk of harm, but offered numerous opportunities for parents to visit them, and eventually reunified them with Plaintiff Johnson when the safety concerns were alleviated. As such, there was no undue burden on their relationship, and therefore Plaintiffs have failed to show a violation of their associational rights.

Because A.H. and E.H. were removed from their parents' care for legitimate health and safety reasons, and because Plaintiffs had the opportunity to participate in the court proceedings and for visitation and reunification with A.H. and E.H., Plaintiffs have not established an underlying constitutional violation.

**5. Plaintiffs Fail to Allege a Plausible Theory of *Monell* Liability.**

Plaintiff brings claims against municipal entities, not state actors. Such claims are referred to as *Monell* claims. To state a plausible *Monell* claim, a plaintiff must show that an official policy or custom was the moving force behind a constitutional violation. An official "policy or custom" may be proven by the existence of a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, failure to train or supervise, or ratification by the final policymaker of the decisions of subordinates to whom authority was delegated subject to the policymaker's review and approval. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). Causation is established if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citations omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is

not held liable solely for the actions of its employees." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

For the reasons stated above, Plaintiffs have failed to allege an underlying constitutional violation. But even if they did, they have further failed to allege a plausible theory of *Monell* liability. They do not point to an official policy. They fail to allege an informal custom by showing a pattern of similar constitutional violations. They do not allege that the way in which the dependency and neglect case was handled was due to any decision made by a final policymaker. They do not allege that they were subject to constitutional violations because of a failure to train or supervise, or that any decision-maker ratified the conduct which led to the alleged constitutional violations. In short, Plaintiffs fail to allege a plausible theory of *Monell* liability.

**C. Plaintiffs Have Not Plausibly Alleged Violations of the ADA.**

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with disabilities in the provision or operation of public services, programs, or activities. Americans with Disabilities Act of 1990 § 201, 42 U.S.C.A. § 12131 *et seq*. Before a public entity can be required under Title II of the ADA to provide reasonable accommodations, the entity must know that the individual is disabled, either because that disability is obvious or more likely because that individual, or someone else, has informed the entity of the disability. *People In Int. of S.K.*, 2019 COA 36, 440 P.3d 1240. Preferably, if the parent knows or has reason to know she has a cognizable disability under the ADA, the issue should be raised before the court adopts a treatment plan and enters a dispositional order, so the county department of housing and human services can include the requested accommodations in the treatment plan for court approval and can provide services accommodating the disability throughout the case. *People In Int. of S.Z.S.*, 2022 COA 133, 524 P.3d 1209, 1214. For a parent to benefit from a reasonable accommodation, the parent

must raise the issue of the ADA's applicability in a timely manner. *Id*. "A parent who waits until the eleventh hour to request a modification under the ADA may thoroughly undermine her ability to establish that such modification is reasonable, particularly once the best interests of the child are taken into account." *Id*., quoting *State in Interest of K.C.*, 2015 UT 92, ¶ 27, 362 P.3d 1248.

A department has an affirmative duty under the ADA to make reasonable accommodations for a parent with a qualifying disability when providing rehabilitative services. *S.K.* at 34. Therefore, when determining whether the department made reasonable efforts, the juvenile court must consider whether the department made reasonable accommodations for the parent's disability. *People In Int. of M.E.L.R.*, No. 25CA0231, 2025 WL 1982667, at *2 (Colo. App. July 17, 2025) A department of human services must make reasonable efforts to rehabilitate the parent and reunite the parent with the child. C.R.S. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h). The reasonable efforts standard is satisfied if the department provides services in accordance with section 19-3-208. C.R.S. § 19-1-103(114). Section 19-3-208 requires a department to provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. C.R.S. § 19-3-208(2)(b). *People In Int. of M.E.L.R.*, No. 25CA0231, 2025 WL 1982667, at *1 (Colo. App. July 17, 2025).

Plaintiff Johnson claims a disability as a person participating in methadone treatment and that EPC DHS discriminated against her by failing to provide services in relation to her disability as required by law. At the outset, the County Defendants note that Plaintiffs have not described how or when they asserted Plaintiff Johnson's disability and requested specific accommodations at any point in the case. Instead, the Complaint alludes to multiple services offered Plaintiff Johnson, such as mental health and substance abuse treatment, which were offered as part of a

treatment plan crafted by EPC DHS as part of their statutory duty. This treatment plan was approved by the court and was meant to address the circumstances that led to A.H. and E.H. being removed from Plaintiff Johnson's care.

Plaintiffs' complaints seem to stem from the theory that EPC DHS did not offer more or better options for Plaintiff Johnson's treatment, yet Plaintiffs do not explain how other options would have addressed her disability any differently. Plaintiff claims she was disadvantaged by a lack of reasonable accommodations, but her Complaint admits that most of her issues with treatment were due to "logistical struggles" such as employment obligations or lack of transportation. (*See* Doc. 10, pp. 10-11; 15-16.) Plaintiffs further acknowledge there were "limited services available" after moving to Oklahoma. *Id.* at pp. 10-11. But EPC DHS had no control over the services available in Oklahoma when Plaintiffs voluntarily moved there. They similarly had no control over Plaintiff Johnson's work schedule, or the availability of providers to offer services at times that worked with Plaintiff's work schedule. Plaintiff Johnson's so-called barriers to treatment under these circumstances cannot be attributed to discrimination or a perceived failure to accommodate.

Plaintiffs have failed to establish that they were discriminated against or denied reasonable accommodations pursuant to the ADA, and therefore all ADA claims must be dismissed.

**D. Plaintiffs' State Law Tort Claims Are Barred by the CGIA.**

The CGIA provides that public entities are immune from liability in all claims for injuries which lie in tort or could lie in tort unless the injury is among those for which immunity has been expressly waived. C.R.S. § 24-10-106(1)(a). Pursuant to the CGIA, immunity is waived only in specific instances as provided by the General Assembly, which include injuries arising from the operation of a motor vehicle; operation of a public hospital, correctional facility, or jail; dangerous

condition of a public building; dangerous condition of a public highway, road, or street; dangerous condition of any public hospital, jail, or public facility; and operation and maintenance of a public water, gas, sanitation, electrical, power, or swimming facility. C.R.S. § 24-10-106(1)(a)-(f). The CGIA further requires that within 182 days after the date of discovery of the injury, a "person claiming to have suffered an injury by a public entity or by an employee thereof…shall file a written notice" to the appropriate government office. C.R.S. § 24-10-109(1). The notice shall include "[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of." C.R.S. § 24-10-109(2)(b). Substantial compliance with the CGIA's notice-provision means that a plaintiff must set forth a factual description sufficient to apprise the defendants of the basis for which the plaintiff would hold them liable. C.R.S. § 24-10-109(1); *see also Dicke v. Mabin*, 101 P.3d 1126, 1131 (Colo. App. 2004); *Carothers v. Archuleta Cty. Sheriff*, 159 P.3d 647, 652 (Colo. App. 2006). Compliance with the CGIA's notice requirements "shall be a jurisdictional prerequisite to any action brought under [the CGIA], and failure of compliance shall forever bar any such action." C.R.S. § 24-10-109(1); *see also Gallagher v. Bd. Of Trs. For Univ. of N. Colo.*, 54 P.3d 386, 391 (Colo. 2002). Pleading compliance with the CGIA's written notice requirement is also a jurisdiction prerequisite to suit. *See Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003) ("Colorado courts consistently hold that a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal.").

Here, Plaintiffs do not allege tort claims that fall within any of the CGIA's exceptions, nor do they plead compliance with CGIA's notice provisions. Thus, the Court must dismiss Plaintiffs' state law tort claims under Fed. R. Civ. P. 12(b)(1).

## V. CONCLUSION

WHEREFORE the County Defendants respectfully respect that the Court enter an order dismissing the claims brought against them with prejudice together with such other and further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 17th day of February 2026.

OFFICE OF THE COUNTY ATTORNEY
OF EL PASO COUNTY, COLORADO

By: */s/ Dorey L. Lindemann*
Dorey L. Lindemann, Reg. No. 50909
Senior County Attorney
Nathan J. Whitney, Reg. No. 39002
First Assistant County Attorney
200 S. Cascade Ave.
Colorado Springs, CO 80903
doreylindemann@elpasoco.com
nathanwhitney@elpasoco.com
*Attorneys for County Defendants*

**I hereby certify that the foregoing paper complies with the length limitation set forth in DDD Civ. P.S. III(A)(1).**

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I electronically filed the foregoing **COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO Fed.R.Civ.P. 12(b)(1) and (6)** with the Clerk of Court using the CM/ECF system which will serve a copy on all CM/ECF participants, and a copy will be served via U.S. Mail and email to non-CM/ECF participants, as follows:

VIA U.S. MAIL and EMAIL
Amy Wrany
2529 Windsor Rd.
Ponca City, OK 74601
amytennille@hotmail.com
*Plaintiff*

VIA U.S. MAIL and EMAIL
Ashley Johnson
1007 S. 9th St.
Ponca City, OK 74601
j.ashleysorell@outlook.com
*Plaintiff*

Rachel E. Ryckman
Kimberly A. Fry
WHITE AND STEELE, P.C.
rryckman@wsteele.com
kfry@wsteele.com
*Attorneys for Defendant Lesha Delaney*

Reza D. Rismani
Chayla A. Witherspoon
FREEMAN MATHIS & GARY, LLP
reza.rismani@fmglaw.com
chayla.witherspoon@fmglaw.com
*Attorneys for Defendant Jessica Driver*

John M. Palmeri
Nicole C. Salamander Irby
GORDON REES SCULLY MANSUKHANI
jpalmeri@grsm.com
nsalamanderirby@grsm.com
*Attorneys for Defendant Kevin Major*

*/s/ Meleah Williams*
Paralegal